UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

FLOYD WHITE and
CATHY TURBEVILLE-WHITE,   Case No. 10-14503 tr7

    Debtor.

FLOYD WHITE and
CATHY TURBEVILLE-WHITE,

    Plaintiffs,

v.   Adv. No. 15-1088 t

CANNON FEDERAL CREDIT UNION,

    Defendant.

## **MEMORANDUM OPINION**

Before the Court is the defendant credit union's motion for summary judgment. In the motion Defendant argues it did not violate the automatic stay or the discharge injunction when it collected, both before and after this case was closed, a pre-petition loan to Plaintiffs. Rather, Defendant asserts that Plaintiffs made the payments voluntarily for several reasons, but principally so they could keep two of their cars. Plaintiffs counter that the submitted facts do not support Defendant's theory of the case, instead showing that Defendant improperly collected over $18,000 on the discharged loan. The Court concludes that the current record contains insufficient evidence to determine whether Plaintiff should be granted relief in this adversary proceeding. Defendant is therefore not entitled to summary judgment.

## I. FACTS

For the limited purpose of ruling on the summary judgment motion, the Court finds that there is no genuine dispute about the following facts:[1]

1. Plaintiffs live and work in Clovis, New Mexico.

2. Defendant is a federal credit union headquartered in Clovis, New Mexico.

3. Defendant loaned $18,772.68, to Plaintiffs on April 25, 2007 to buy a 2004 Ford Ranger (the "2007 Car Loan"). The document memorializing the 2007 Car Loan granted Defendant a security interest in the Ranger.

4. On July 6, 2009, Plaintiffs traded in the Ranger and bought a 2005 Pontiac Grand Am. The Grand Am was substituted for the Ranger as collateral for the 2007 Car Loan.

5. Defendant loaned Plaintiffs $7,899.00 on February 24, 2010 to buy a 2005 Chevrolet Malibu (the "2010 Car Loan").[2] The document memorializing the 2010 Car Loan granted Defendant a security interest in the Malibu.

6. In addition to the Car Loans, Defendant made advances to Plaintiffs from time to time under a separate loan arrangement (the "Third Loan"). On April 9, 2010, Defendant loaned Plaintiffs $1,580.40, increasing the balance of the Third Loan to $15,000. The advance and the Third Loan were memorialized by an agreement titled "Open-End Voucher and Security Agreement."

---

[1] In making these findings, the Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that a court may *sua sponte* take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) (citing Fed. R. Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013), affirmed, 498 B.R. 852 (N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

[2] Together with the 2007 Car Loan, the "Car Loans." The Grand Am and the Malibu are together referred to as the "Cars."

7. The agreement describes the collateral securing the Third Loan as follows:

| THE ADVANCE IS SECURED BY YOUR SHARES, ALL PROPERTY SECURING OTHER PLAN ADVANCES AND LOANS RECEIVED IN THE PAST OR IN THE FUTURE, AND THE FOLLOWING PROPERTY: | | | | |
|---|---|---|---|---|
| PROPERTY/MODEL | YEAR | I.D. NUMBER | VALUE | KEY |
| PLEDGE OF SHARES AND/OR DEPOSITS $ | ACCOUNT NUMBER | PLEDGE OF SHARES AND/OR DEPOSITS $ | | ACCOUNT NUMBER |

8. The Car Loans had identical language but also specifically identified the Cars by make, model, year, VIN, and value.

9. Plaintiffs filed this Chapter 7 bankruptcy case on September 1, 2010.

10. Plaintiffs' Schedule B states that the Grand Am and the Malibu are worth $8,000 and $6,000, respectively.

11. Plaintiffs' Schedule D states that the balances of the 2007 Car Loan and 2010 Car Loan are $10,394 and $7,307, respectively. Thus, the schedules reflect that Plaintiffs were "underwater" by $3,701 on the Car Loans.

12. Plaintiffs' Schedule F includes the Third Loan as a general unsecured debt, with a loan balance of $19,403.[3]

13. In their Statement of Intention Plaintiffs disclosed their intention to retain the Grand Am and the Malibu and reaffirm the Car Loans. The Third Loan is not mentioned.

14. Starting in October 2010 Defendant deducted $300 a month from Plaintiffs' deposit account at the credit union and applied the deducted amounts to the Third Loan.

15. Plaintiffs filed reaffirmation agreements for the Car Loans on November 23, 2010. The reaffirmation agreements included the same values for the Cars as on Plaintiffs' Schedule B.

16. On November 24, 2010, the Court (Hon. James Starzynski, retired) entered orders

---

[3] The Court cannot reconcile this figure with the $15,000 loan balance on April 9, 2010.

disapproving the reaffirmation agreements because the cover sheets (not the agreements themselves) did not include a current market value for the Cars.

17. The final paragraph of each November 24 order states: "[w]ith Debtors' permission, Creditor may resume sending monthly statements to Debtors and/or accepting payments online from Debtors and/or debiting Debtors' account, and such action(s) shall not be deemed to be a violation of either section 362 (automatic stay) or of section 524 (discharge injunction)."

18. Plaintiffs filed amended reaffirmation documents for the Car Loans on November 29, 2010. The amended documents added the car values to the cover sheets. The values were the same as on Plaintiffs' Schedule B and the reaffirmation agreements.

19. The amended reaffirmation documents did not mention the Third Loan. The Third Loan was not reaffirmed.

20. The Court did not approve or disapprove the amended reaffirmation agreements.

21. The Court entered its discharge order and final decree on December 27, 2010.

22. After entry of the discharge order, Defendant made three new advances to Plaintiffs: $2,000 on January 30, 2011; $1,000 on September 15, 2011; and $1,226.23 on February 24, 2012.

23. Each new advance was memorialized by a loan agreement that included the pre-discharged portion of the Third Loan. When the last post-discharge advance was made, the parties signed a "Loan and Security Agreements [sic] and Disclosure Statement" dated February 24, 2012, reflecting a balance of $21,183.83 and requiring 126 monthly payments of $300. Interest accrued on the unpaid balance at 12.48%.

24. The February 24, 2012 agreement described the security for the loan as follows:

| Security: Collateral securing other loans with the credit union may also secure this loan. You are giving a security interest in your shares and dividends and, if any, your deposits and interest in the credit union; and the property described below: | | | | | | |
|---|---|---|---|---|---|---|
| Collateral | Property/Model | Year | I.D. Number | Type | Value | Key Number |
| Other (Describe) | | | | | | |
| Pledge of Shares | | | in Account No. | | in Account No. | |

25. The monthly $300 deductions, which began in October 2010 and ended in September 2015, totaled $18,000. In addition, Plaintiffs made one regular payment of $300 to Defendant on October 29, 2015.

26. All of the deductions and the last regular payment were applied to the Third Loan.[4]

27. Plaintiffs paid off the 2007 Car Loan on July 2, 2013, apparently with payments other than the $300 monthly deductions. Defendant released its lien on the Grand Am three days later.

28. Plaintiffs paid off the 2010 Car Loan on February 15, 2014, also apparently with other payments. Defendant released its lien on the Malibu three days later.

29. Plaintiffs asked Defendant to stop the automatic monthly $300 deductions on or about October 29, 2015.

## II. DISCUSSION

A. <u>Summary Judgment Standards</u>.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Rule 56 applies in adversary proceedings. *See* Fed. R. Bankr. P. 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the

---

[4] This term includes both the pre-petition and post-discharge advances.

basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant carries this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *F.D.I.C. v. Lockhaven Estates, LLC*, 918 F. Supp. 2d 1209, 1231 (D.N.M. 2012) (citing *Celotex*). Further, the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citing *Celotex*, 477 U.S. at 324).

To deny a motion for summary judgment, genuine fact issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *See Anderson*, 477 U.S. at 251; *Vitkus*, 11 F.3d at 1539.

   B.  <u>Collection of the Third Loan</u>.

The crux of this dispute is whether Defendant's effort to collect the Third Loan violated the automatic stay or discharge injunction. The automatic stay prevents the collection of prepetition debts during the pendency of the bankruptcy case, while the discharge injunction prohibits efforts to collect a discharged debt as a personal liability of the debtor. *In re Paul,* 534 F.3d 1303, 1309 n. 6 (10th Cir. 2008); 11 U.S.C. §§ 362, 524. Defendant argues, in general, that the Third Loan was secured by the Cars, so to avoid repossession Plaintiffs voluntarily paid the Third Loan at the rate of $300 a month. Defendant also argues that the November 24 orders allowed the monthly deductions. Finally, Defendant argues that Plaintiffs signed a novation of the

-6-

discharged Third Loan in consideration for the three post-discharge advances. The Court will examine these and related arguments.

       1.    <u>Were the Cars Collateral for the Third Loan</u>?

          a.    <u>The collateral descriptions in the security agreements</u>. The collateral descriptions in most of the agreements memorializing the Third Loan are general and ambiguous. These versions describe the collateral as: "Your shares, all property securing other plan advances and loans received in the past or in the future, and the following property . . . ." This language is unclear. How should the phrase "other plan advances and loans" be understood? Does "loans" modify "plan" (i.e. "other plan advances" or "other plan . . . loans"), or should it be read independently (i.e. other "plan advances" or other "loans")? Also, why weren't the Cars specifically described, as they were in the Car Loan documents?

The language in the final agreement evidencing the Third Loan is even less clear. Its collateral description is: "Collateral securing other loans with the credit union may also secure this loan. You are giving a security interest in your shares and dividends and, if any, your deposits and interest in the credit union; and the property described below: [left blank]." What is meant by the term "may also secure"? How can one tell if collateral securing other loans did in fact secure the Third Loan?

These descriptions raise other questions. Did the parties ever discuss whether the Cars secured the Third Loan? Why wasn't the Third Loan reaffirmed? Why wasn't it mentioned in the reaffirmation agreements for the Car Loans? If Defendant meant to take a junior lien on the Cars to secure the Third Loan, why weren't the Cars mentioned? The Court finds that there are disputed fact issues about whether Plaintiffs pledged the Cars as collateral for the Third Loan.

-7-

b. <u>The value of the Cars</u>. The only evidence in the current record is that in 2010 the Cars were worth $3,701 less than the Car Loans debt. Defendant asserts Plaintiffs paid $300 a month for at least five years for the privilege of retaining and making additional payments on the "upside down" used cars. The trial evidence may bear this out, but it is possible that Plaintiffs had no such intention and never agreed to do so.

c. <u>Release of the Car titles</u>. Furthermore, the fact that Defendant released each Car title after the subject Car Loan was paid off is inconsistent with Defendant's theory of the case. Maybe the releases were a mistake, and maybe there is an alternative explanation, but the releases raise fact issues about whether the Cars secured the Third Loan.

d. <u>Plaintiffs' knowledge that the Cars secured the Third Loan</u>. The record does not make clear that Plaintiffs were ever told, or ever knew, that the Cars arguably were collateral for the Third Loan (if that turns out to be the case). If Defendant had made clear, during the bankruptcy case, that it would repossess the Cars unless Plaintiffs paid both Car Loans and the Third Loan in full, Plaintiffs may not have agreed to such an arrangement. After all, the Cars were worth about $14,000, while the three pre-discharge loans totaled about $34,000.

2. <u>Were the Monthly Payments Voluntary</u>? Defendant next argues it did not violate the discharge injunction because the $300 monthly payments were made voluntarily, "at Plaintiffs' request."[5] The supporting affidavit, however, does not establish this fact because it is by an employee who started working at Defendant several years after the monthly deductions began. Further, the affiant does not refer to any loan document or other writing that gives

---

[5] Section 524(f), which deals with reaffirmation agreements, states that "nothing contained in subsection (c) or (d) of this section prevents a debtor from voluntarily repaying any debt."

Case 15-01088-t    Doc 12    Filed 06/03/16    Entered 06/03/16 15:44:09 Page 8 of 13

Defendant permission to make the monthly deductions. The Court finds that fact issues on this point preclude summary judgment.

        3.    <u>Were the Monthly Deductions Permitted by Court Order</u>? Next, Defendant argues that the November 24 orders authorized the $300 monthly deductions. That argument has difficulties as well. While the orders allow Defendant to debit Plaintiffs' account (with Plaintiffs' permission), the language seems to be directed at the Car Loans, not the Third Loan, so Plaintiffs could "pay and drive" without a valid reaffirmation agreement.[6] Further, as stated above it is unclear whether Plaintiffs knew of, and gave permission for, the monthly deductions and how they were applied.[7]

        4.    <u>Was the Third Loan Collateralized by Deposit Accounts</u>? Defendant also argues that the $300 monthly deductions were voluntary because, after February 24, 2012, Defendant had a security interest in Plaintiffs' deposit accounts, and Plaintiffs agreed to the deductions to prevent an offset that would deplete the accounts. However, Defendant has not established how much was kept in the accounts, whether the offset risk was ever discussed by the parties, whether Plaintiffs were aware that Defendant asserted an interest in the accounts, and whether Defendant offset the accounts after October 29, 2015.

---

[6] *See, e.g.,* § 524(l), which allows a creditor to accept payments under a reaffirmation agreement that it believes in good faith to be effective; *In re Dumont,* 581 F.3d 1104, 1108 (9th Cir. 2009) (discussing in general the "ride through" practice of allowing debtors to make monthly payments on car loans that had not been reaffirmed).

[7] The monthly payment likely could have been applied to the post-discharge advances without violating the discharge injunction. The discharge injunction does not prevent a creditor from collecting debts incurred post-petition. *See* § 524(a) (a discharge operates as an injunction against the collection of debts discharged under § 727), and § 727(b) (discharges all debts that arose before the date of the order for relief). *See also In re Smith*, 488 B.R. 101, 103 (8th Cir. BAP 2013) (debtor's bankruptcy discharge did not discharge creditor's claim to the extent it accrued post-petition); *In re Taggart*, 548 B.R. 275, 289 (9th Cir. BAP 2016) (same).

-9-

5. <u>Was there a novation of the discharged debt</u>? Defendant asserts that each of the three small post-discharge advances constituted new consideration from Defendant to Plaintiffs, such that Plaintiffs' agreement to pay the pre-petition portion of the Third Loan was a "valid, post-discharge agreement[ ] that w[as] not discharged in Plaintiffs' bankruptcy." This argument fails at the summary judgment stage. If a creditor agrees to lend a debtor $2,000 on the condition that the debtor agree to repay the $2,000 and also $17,945.45 of discharged debt, that could be a violation of the discharge injunction. *See generally Venture Bank v. Lapides*, 800 F.3d 442, 446-448 (8th Cir. 2015) (discussing in general the case law dealing with post-discharge agreements that include, inter alia, a debtor's agreement to pay discharged debt); 4 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 524.04 at 524–41 (16th ed. 2015) (general discussion of the validity of agreements entered into post-discharge to repay discharged debts). The Court will need to take evidence at trial to determine all of the relevant facts concerning any alleged novation of the discharged debt.

    C.    <u>Damages</u>.

        1.    <u>Automatic Stay</u>. Section 362(k)(1) provides:

> Except as provided in paragraph (2),[8] an individual injured by any willful violation of the automatic stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

"A debtor alleging a [willful] violation of the automatic stay has the burden to demonstrate, by a preponderance of the evidence, that a violation of the automatic stay has occurred, that the violation was willfully committed and that the debtor suffered damage as a result of the violation." *In re Kline*, 424 B.R. 516, 524 (Bankr. D.N.M. 2010) (citation omitted). For purposes of § 362(k),

---

[8] Paragraph (2) deals with repossession of certain types of personal property.

-10-

willfulness requires "that the creditor knew of the automatic stay and intended the actions that constituted the violation; no specific intent is required." *Johnson v. Smith (In re Johnson)*, 501 F.3d 1163, 1172 (10th Cir. 2007).[9]

      a.    <u>Was any violation willful</u>? Defendant seeks summary judgment that any violation of the automatic stay was not willful because of, inter alia, the language of the November 24 orders. This argument cannot justify the monthly deductions made before entry of the orders, so the summary judgment request must be denied. Defendant's other arguments on this matter also are overruled. The Court needs to take evidence to determine exactly why the parties took the actions they did, what they said to each other, and how they interpreted the loan documents. The current record in not sufficient to determine whether Defendant's actions were willful, assuming a stay violation occurred.

      b.    <u>Were Plaintiffs Damaged</u>? Defendant also argues that it is entitled to summary judgment because the undisputed facts show that Plaintiffs were not damaged, since they got to keep the Cars. This argument is not persuasive. Defendants did not receive the cars as some sort of windfall; they paid the Car Loans in full. Further, for the reasons set forth above, it is not clear that the Cars secured the Third Loan, whether Defendant would have repossessed the Cars had the $300 monthly deductions not been allowed, or whether the parties had thought about or discussed conditioning retention of the Cars on the monthly deductions.

---

[9] The test for willful violation of the discharge injunction is similar. *See, e.g., In re Hardy,* 97 F.3d 1384, 1390 (11th Cir. 1996) (violation of § 524 discharge injunction is willful if creditor knew about the injunction and intended the actions that violated it); *In re Culley,* 347 B.R. 115, *5 (10th Cir. BAP 2006) (For purposes of § 524, willful means volitional and deliberate, as opposed to unintentional or accidental); *In re Nibbelink*, 403 B.R. 113, 120 (Bankr. M.D. Fla. 2009) (citing and following *Hardy*).

-11-

2. <u>Discharge Injunction</u>.  There is no private right of action under § 524(a)(2) when a creditor violates the discharge injunction.  *In re Otero,* 498 B.R. 313, 319 (Bankr. D.N.M. 2013) (surveying the case law).  The remedy lies in contempt proceedings, in which the Court may assess sanctions pursuant to § 105.  *In re Paul,* 534 F.3d 1303, 1306-1307 (10th Cir. 2008) ("Under 11 U.S.C. § 105(a), bankruptcy courts have the equitable power to enforce and remedy violations of substantive provisions of the Bankruptcy Code, including in particular the discharge injunction in § 524(a)(2)… Thus, a bankruptcy court may sanction a party for violating the discharge injunction….").  *See also Bessette v. Avco Financial Services, Inc.,* 230 F.3d 439, 445 (1st Cir. 2000) (collecting cases for the proposition that sanctions are the generally recognized remedy).

"In cases in which the discharge injunction was violated willfully, courts have awarded debtors actual damages, punitive damages and attorney's fees."  4 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 524.02[2][c] (16th ed. 2015), citing *Hardy,* 97 F.3d at 1390.  *See also Culley* 347 B.R. at *5 (upholding award of actual damages, attorney fees, and punitive damages as a sanction for violating the discharge injunction); *Otero,* 498 B.R. at 321 (same).

Relying on the same arguments it used for the automatic stay issue, Defendant asks for summary judgment that it did not willfully violate the discharge injunction.  For the same reasons the Court denied that request, this one is also denied.  The Court is not ruling that Defendant violated the discharge injunction and/or did so willfully; only that there are a number of disputed facts on those points, including all those identified above.

D. <u>Equitable Defenses</u>.  Defendant asks the Court to grant Defendant relief under the equitable doctrines of laches and/or unjust enrichment.  Defendant can make this argument at trial, but the fact issues identified above preclude the entry of summary judgment on such doctrines.

-12-

III.  CONCLUSION

Defendant has a number of plausible arguments why it should prevail in this adversary proceeding. The evidence at trial may support Defendant's position, but the current record is inadequate to grant summary judgment. The missing facts include whether the cars were collateral for the discharged debt; whether Plaintiffs knew and agreed to the $18,000 payments, and if so why; what discussions the parties had about collateral, reaffirmation, discharge, and/or novation of the discharged debt; and what the intentions of the parties were. Because of the incomplete evidence, the motion will be denied. A separate order will be entered.

_____

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: June 3, 2016

Copies to:

Wesley Pool
201 Innsdale Terrace
Clovis, NM  88101

William F. Davis
6709 Academy NE, Suite A
Albuquerque, NM  87109